## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| BRYAN LEE DANIEL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 4:17-cv-0036-KOB-JEO |
| | ) | |
| WARDEN CHRISTOPHER GORDY, | ) | |
| et al., | ) | |
| | ) | |
| Respondents. | ) | |

## <u>MEMORANDUM OPINION</u>

This habeas corpus case was filed on or about January 2, 2017, pursuant to 28 U.S.C. § 2254 by Petitioner Bryan Lee Daniel, an Alabama state prisoner acting *pro se*. (Doc.[1] 1 ("Petition" or "Pet.")).  Incarcerated at the Limestone Correctional Facility in Harvest, Alabama, Daniel challenges his 1989 guilty-plea convictions on two counts of intentional murder, in violation of Ala. Code § 13A-6-2(a)(1), for which he is serving two consecutive life sentences.  (*Id.*)  The magistrate judge to whom the case was referred entered a report and recommendation ("R&R") concluding that Daniel's habeas petition is barred by the one-year statute of limitations, 28 U.S.C. §

---

[1] References to "Doc(s)___" are to the documents number of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of the Court.  Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF system, which may not correspond to pagination on the original "hard copy" of the document presented for filing.

2244(d).  (Doc. 4).  Daniel has filed a 32-page objection (Doc. 9), which includes a declaration from the fellow inmate who has prepared Daniel's filings in this court. (*Id.* at 32).  The court discerns Daniel's objection to contain arguments that can be broken down into four sections.  They are addressed in turn below.

## I.

Daniel first objects to the magistrate judge's having raised the statute of limitations *sua sponte*, without having the State respond to the petition.  (Doc. 9 at 5-8).  However, the court has discretion to address issues where, as here, the State has not waived the defense.  *See Day v. McDonough*, 547 U.S. 198, 207-11 (2006); *Jackson v. Secretary for DOC*, 292 F.3d 1347, 1349 (11th Cir. 2002).  Indeed, raising the timeliness issue is particularly appropriate here given that, under 28 U.S.C. § 2244(d)(1)(A), the limitations period on Daniel's claims only extended one year past the date his murder convictions became final in April 1996,[2] and Daniel did not file this action until January 2017, or *more than 19 years too late* absent tolling of the limitations period.  Further, Daniel has suffered no unfair prejudice because he has

---

[2]Under traditional habeas doctrine, Daniel's murder convictions became final in 1989, upon the expiration of his deadline for filing a timely direct appeal under state law.  *See Griffith v. Kentucky*, 479 U.S. 314, 321 n. 6 (1987).  However, for purposes of 28 U.S.C. § 2244(d)(1)(A), his convictions are deemed not to have become final until April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which contains the relevant statute of limitations.  *See Wilcox v. Florida DOC*, 158 F.3d 1209, 1211 (11th Cir. 1998).

been afforded notice and an opportunity to challenge the time bar in his objections to the R&R, prior to any final adjudication by the court. *See Day*, 547 U.S. at 210-11; *Campos v. United States*, 2016 WL 6821134, at *1 n. 5 (N.D. Ga. Aug. 10, 2016), *report and recommendation adopted*, 2016 WL 6805305 (N.D. Ga. Nov. 15, 2016). This objection lacks merit.

## II.

Daniel next disputes the magistrate judge's determination that the petition is not saved by equitable tolling of the limitations period. (Doc. 9 at 8-19). A habeas petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling, however, is "an extraordinary remedy" that "is typically applied sparingly." *Arthur v. Allen*, 452 F.3d 1234, 1252 (11th Cir. 2006). At the pleading stage, the petitioner has the burden to allege facts that are "specific and not conclusory" and that, if true, would justify tolling for a period sufficient to render the petition timely filed. *Hutchinson v. Florida*, 677 F.3d 1097, 1099 (11th Cir. 2012); *see also Lugo v. Secretary, Fla. DOC*, 750 F.3d 1198, 1209 (11th Cir. 2014); *Chavez v. Secretary, Fla. DOC*, 647 F.3d 1057, 1073 (11th Cir. 2011).

Daniel's claim of equitable tolling is based on an alleged mental impairment. The magistrate judge acknowledged that, under *Hunter v. Ferrell*, 587 F.3d 1304 (11th Cir. 2009), equitable tolling may apply where a petitioner pleads and proves specific facts supporting both (1) that he suffers from a substantial mental impairment and (2) that such impairment actually prevented him from being able to file his federal habeas petition within the statute of limitations. *Id.* at 1308; *see also Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005), *aff'd*, 549 U.S. 327 (2007). The magistrate judge concluded, however, that Daniel's "generalized allegations that he suffers from a mental impairment for which he has been prescribed Xanax" fall far short of establishing equitable tolling, particularly for long enough to overcome the fact that his petition is otherwise untimely by over 19 years. (R&R at 8). Daniel disputes that determination on both substantive and procedural grounds.

As to substance, Daniel first claims that he is entitled to equitable tolling based on repeated assertions that, both at the time of the killings in April 1989 and when he pled guilty in September 1989, he was allegedly under the influence of Xanax, a brand name for the prescription anti-anxiety drug Alprazolam. (*See* Doc. 9 at 4, 10, 15-19, 21). Daniel says that since before he committed the crimes, he had been taking the medication for "mental problems" that caused him to "hav[e] delusions, hear[ ] voices and [be] depressed." (*Id.* at 10; *see also id.* at 4 ("Daniel was prescribed and under the

4

influence of Xanax while incarcerated in the Dekalb County Jail [awaiting trial] because of hi[s] hearing voices, and seeing thing[s] which were not there.")).  Daniel further argues that the magistrate judge's rejection of his equitable tolling claim "overlooks" the fact that, at the time of the killings, Daniel was not only taking Xanax but also had been "consuming alcohol in substantial amounts." (*Id.* at 15).  Citing expert testimony discussed in *Lucas v. Warden, Ga. Diagnostic & Classification Prison*, 771 F.3d 785, 796 (11th Cir. 2014), and *Pitonyak v. Stephens*, 732 F.3d 525, 528-30 (5th Cir. 2013), Daniel posits that consuming Xanax and alcohol together "literally drives [people] insane, it almost destroys a person[']s reasoning, judgment, and can cause the person to commit violent crimes." (Doc. 9 at 16).

Such allegations, however, miss the mark because Daniel's claim of equitable tolling does not depend on his level of intoxication, criminal culpability, or mental status in 1989 when he committed the murders or when he pled guilty.  Rather, under *Hunter*, Daniel must establish that he suffered from a substantial mental impairment that prevented him from being able to file a timely federal habeas corpus petition.  As such, the relevant time frame for his claim of equitable tolling is the period after the statute of limitations would have commenced running on April 24, 1996, AEDPA's effective date, up through, at the latest, when Daniel filed this federal habeas corpus action on or about January 2, 2017.  *See Peterson v. Secretary, Fla. DOC*, 631 F.

App'x 664, 666 (11th Cir. 2015) ("The only period of time relevant to our equitable tolling analysis is ... while the statute of limitations clock was still running and there was time left to be tolled."); *Moore v. Frazier*, 605 F. App'x 863, 866-67 (11th Cir. 2015) (circumstances occurring before the limitations began to run could not justify equitable tolling); *Lugo*, 750 F.3d at 1209-10 (events occurring after the limitations period expired were not probative of the petitioner's diligence before the limitations period expired).

So, Daniel's burden is a heavy one because he must allege specific facts reasonably supporting that, because of a substantial mental impairment, during no one year period of untolled time in the 20-plus years between April 24, 1996 and January 2, 2017 could he have filed a § 2254 petition. To that end, Daniel's claim that he was under the influence of Xanax, alone or along with alcohol, when he killed the victims and when he pled guilty in 1989 means little to nothing. *See Smith v. Jones*, 2015 WL 521067, at *10 (N.D. Fla. Feb. 9, 2015) (petitioner's allegations that he was under the influence of "'heavy doses' of antipsychotic and psychotropic medications" for several years prior to the effective date of AEDPA could not support equitable tolling).

Rather, only allegations that bear on the time period after April 24, 1996 are relevant. In that vein, Daniel does assert in his habeas application that, since

sometime before committing the murders in April 1989, he had suffered from "mental problems of having delusions, hearing voices, and being depressed," for which he had been prescribed Xanax. (Doc. 1 at 9). That circumstance could have some probative value, but only insofar as it might further be reasonably found both (1) that Daniel continued to experience such mental problems into and well beyond 1996, and (2) that his associated symptoms were so severe they materially limited his ability to file a federal habeas petition. However, nothing in Daniel's petition might even arguably support either inference.

Nevertheless, the court recognizes that Daniel's objection to the R&R does include some allegations to the effect that he has a persistent mental impairment and that he has experienced other obstacles to filing since going to prison. Those allegations are as follows:

> Daniel is cognitively challenged, suffers from mental disease or defect, he is incarcerated, indigent and has been without counsel since his convictions in State Court, and [he] is totally and completely incapable of preparing his own petitions and pleadings pro-se (sic). Daniel has had to rely solely and entirely upon another inmate, who out of the goodness of his heart, agreed to prepare Daniel's petitions and pleadings for him in the State and Federal Courts in his case.

(Doc. 9 at 19).

In addition, the inmate who prepared Daniel's filings, Timothy J. Richards, has submitted a declaration under 28 U.S.C. § 1746, that similarly states in relevant part:

7

> I am the [inmate] law clerk who has prepared Daniel's pleading for him, because Daniel has a mental impairment. Daniel has been in the past prescribed with Xanax to help him cope with his mental impairment, of having delusions and hearing voices. Daniel is also not capable of understanding the Alabama law, [and] Daniel cannot prepare his own pleadings.... Daniel has a hard time understanding time, moreless (sic) law.

(Doc. 9 at 32).

Looking at the above allegations, however, it must be recognized at the outset that Daniel's being "incarcerated, indigent and ... without counsel since his convictions" are plainly not extraordinary circumstances that might support equitable tolling. *See Wakefield v. Railroad Ret. Bd.*, 131 F.3d 967, 970 (11th Cir. 1997); *DeLeon v. Florida DOC*, 470 F. App'x 732, 734 (11th Cir. 2012); *Melton v. Frazier*, 2009 WL 2634114, at *6 (S.D. Ga. Aug. 26, 2009). Nor are his lack of legal training or that he was generally ignorant of his legal rights or applicable legal procedures. *See Perez v. Florida*, 519 F. App'x 995, 997 (11th Cir. 2013); *Rivers v. United States*, 416 F.3d 1319, 1323 (11th Cir. 2005); *Cutts v. Jones*, 2009 WL 230091, *6 (M.D. Ala. Jan. 30, 2009).

Once such claims are appropriately discounted, Daniel's remaining allegations are conclusory and vague, particularly given that they have to plausibly support an application of some 19-plus years of equitable tolling. That is, Daniel says that he is "cognitively challenged" to some unspecified degree, and that he has some "mental

8

disease or defect" or "mental impairment" unattached to any named diagnosis or condition. Daniel nonetheless claims that such impairment has led him, on otherwise unspecified occasions, to have "delusions" and "hear voices," causing some unidentified health care provider(s) to prescribe Xanax, both at sometime prior to the killings in April 1989 and while he was in jail awaiting trial in September 1989. But, as the magistrate judge observed, that Daniel was prescribed Xanax does not itself reasonably support that he suffers from a substantial mental impairment that would have prevented him from filing a federal habeas petition for over 19 years. *See Robinson v. Director, TDCJ-CID*, 2015 WL 2394096, at *4 (E.D. Tex. May 18, 2015) ("The fact that Robinson was one of the millions of people who take Zoloft or Xanax is not an extraordinary circumstance [necessary for equitable tolling of the limitations period]."); *United States v. Campellone*, 2008 WL 4889542, at *5 (E.D. Pa. Nov. 12, 2008) (denying equitable tolling, explaining, "There is no indication that simply because [the petitioner] was taking prescription Xanax and was 'stressed' that she was unable to timely file her petition.").

Moreover, neither Daniel nor Richards specifically alleges that in the 28-or-so years since Daniel pled guilty that he has been prescribed Xanax or any other medication, received treatment, or even been evaluated for the alleged problem. In fact, Richards's statement that Daniel "has been in the past prescribed with Xanax"

9

clearly implies that, to Richards's knowledge, it is no longer prescribed and that Daniel does not continue to take any medication otherwise for the issue.

Finally, Daniel and Richards also allege in rather cursory fashion that Daniel is not capable of understanding the law or preparing legal filings on his own. But again, the fact that a habeas petitioner is unaware of his legal rights or has trouble following legal procedures by himself is not generally cause for equitable tolling. *See Perez*, 519 F. App'x at 997; *Rivers*, 416 F.3d at 1323; *Cutts*, 2009 WL 230091, at *6. Furthermore, Daniel and Richards's allegations on this score are largely belied by the fact that Daniel evidently has been able to recount and articulate to Richards the details not only of Daniel's crimes as he ostensibly remembers them but also of the procedural history of his entire case in the Alabama state trial and appellate courts, from arrest and indictment through his unsuccessful collateral appeal. Indeed, it is clear that Daniel was capable of having filed this federal habeas action more than one year before he actually did so on or about January 2, 2017.

That is so because Daniel acknowledges that, on October 15, 2015, he filed a *pro se* petition in the state trial court seeking post-conviction relief under Rule 32, ALA. R. CRIM. P., raising the same claims as in this federal habeas action. (Doc. 1 at 10-11). When that application was summarily denied, he timely appealed to the Alabama Court of Criminal Appeals. (*Id.* at 11-12). And after that appeal failed, he

filed an application for rehearing and then a certiorari petition in the Alabama Supreme Court, which denied review on October 14, 2016. (*Id.* at 12).

These circumstances demonstrate that Daniel cannot establish that his alleged mental impairment prevented him from being able to timely file a federal habeas action. *See Fox v. McNeil*, 373 F. App'x 32, 34 (11th Cir. 2007) (holding that alleged mental incompetence did not warrant equitable tolling where petitioner was able to file several *pro se* motions in state court for post-conviction relief and he ultimately filed a federal habeas petition); *Bell v. Secretary, DOC*, 248 F. App'x 101, 104 (11th Cir. 2007) (holding that the petitioner failed to establish equitable tolling based on an alleged inability to access the prison law library where he had been able to file three *pro se* motions for post-conviction relief in state court during the relevant time period).

Daniel also argues that the R&R's rejection of his equitable tolling claim is flawed on procedural grounds. First, Daniel contends that the magistrate judge failed to acknowledge that, under the Supreme Court's decision in *Holland*, "§ 2244(d)'s statute of limitation is normally subject *to a presumption* in favor of equitable tolling." (Doc. 9 at 9 (emphasis original)). However, Daniel's stated premise does not accurately reflect the law. The burden to plead and then prove specific facts establishing the elements of equitable tolling lies squarely with the petitioner. *Lugo*,

750 F.3d at 1209. While *Holland* recognizes "that there is a general presumption that non-jurisdictional federal statutes of limitations are subject to equitable tolling..., *Holland* does not suggest that federal courts should presume that a specific petitioner is entitled to equitable tolling." *Spears v. Warden*, 605 F. App'x 900, 903 n. 2 (11th Cir. 2015).

Daniel also argues that the magistrate judge's determination of the equitable tolling issue is premature on procedural grounds because it was made (1) without an evidentiary hearing, (2) without the State being ordered to answer or provide relevant portions of the state court record, and (3) without affording Daniel an opportunity to amend his petition. (Doc. 9 at 10-15). None of these objections is valid. Again, Daniel bears the burden to plead specific facts sufficient to indicate that equitable tolling is not only warranted but also for a long enough period to render his federal habeas petition timely. And at this stage of the proceedings, Daniel's well-pled, *i.e.*, non-conclusory, factual allegations are simply accepted as true; he need not yet support them with evidence, from the state court record or otherwise. *See Bundy v. Wainwright*, 808 F.2d 1410, 1414-15, 1421 (11th Cir. 1987).

So unless and until Daniel alleges *facts* that would warrant equitable tolling that would save him from a statute-of-limitations dismissal, he is not entitled to an evidentiary hearing on the issue. *See Hutchinson*, 677 F.3d at 1099; *Chavez*, 647 F.3d

at 1060-61; *Spears*, 605 F. App'x at 905. Nor is he entitled, in the absence of having

made such factual allegations, to a copy of the state court record in the mere hope that

it will contain documentation supporting his claim. *See Bundy*, 808 F.2d at 1414-15

(recognizing that, under Rule 4 of the Rules Governing § 2254 Habeas Proceedings, a

district court is authorized to summarily dismiss a petition that is facially deficient

without requiring the State to respond or provide the state court record); *Hansen v.*

*United States*, 956 F.2d 245, 248 (11th Cir. 1992) ("[A] prisoner is entitled to access

to the court files [in his criminal case] only after he has made a showing that such files

are necessary to the resolution of an issue or issues he has presented in a non-frivolous

pending collateral proceeding."); *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir.

1975)[3] ("Appellant is not entitled to a free copy of his transcript and record to search

for possible trial defects merely because he is an indigent").

Daniel also complains that he was not given a chance to amend his habeas

petition to include additional facts in support of equitable tolling before the magistrate

judge made his recommendation. However, Daniel has been given a full and fair

opportunity to allege any such facts as he can in his objections to the R&R, which

have been considered here by the court. *See Day*, 547 U.S. at 210-11; *Campos v.*

---

[3]The decisions of the United States Court of Appeals for the Fifth Circuit handed down
before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d
1206, 1207 (11th Cir. 1981) (en banc).

13

*United States*, 2016 WL 6821134, at *1 n. 5 (N.D. Ga. Aug. 10, 2016), *report and recommendation adopted*, 2016 WL 6805305 (N.D. Ga. Nov. 15, 2016).  All of Daniel's equitable tolling arguments are without merit.

## III.

Daniel next objects to the R&R's determination that he is not entitled to have his time-barred claims heard on their merits on the ground that he is allegedly innocent.  (Doc. 9 at 19-22).  AEDPA's statute of limitations is subject to a "fundamental-miscarriage-of-justice" exception, whereby the time-bar can be overcome by a credible showing by the petitioner that he is actually innocent. *McQuiggin v. Perkins*, 569 U.S. 383, 392-94 (2013).

Under that exception, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  The district court considers all of the evidence in the case, new and old, exculpatory and inculpatory, to make "a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Schlup*, 513 U.S. at 329)).  The timing of the submission of new evidence offered by the petitioner is

relevant, as is the likely credibility of the affiants. *Sibley v. Culliver*, 377 F.3d 1196, 1206 (11th Cir. 2004).

To open a gateway to consideration of his substantive claims, Daniel says he is actually innocent of one or both of the murder counts to which he pled guilty. In support, Daniel now claims he did not intentionally kill anyone. In particular, he recounts that he was driving on the date in question, highly intoxicated on a cocktail of Xanax and alcohol when he became agitated. He says he stopped his vehicle, took out a shotgun he had with him and fired a blast into what he thought was an abandoned cave. It was not until days later, he says, that he found out he had killed two people in the cave with that single blast. In addition to telling that story of his incredibly bad luck, he says that, at a minimum, he was so under the influence of the Xanax and alcohol that he was prevented from forming the specific intent to kill, a necessary element of intentional murder under Ala. Code § 13A-6-2(a). (Doc. 9 at 21). Finally, he asserts that since he killed both victims with a single shotgun blast, "even if by some stretch of the imagination [he] had the intent to kill one of the people ..., he is actually innocent of *intentionally killing* the second person who happened to be hit by the spread of the shot ...." (*Id.* at 21-22 (emphasis original)).

These arguments are unconvincing. First, the only proof that Daniel cites in support of his claim of innocence is extremely weak on its face, amounting merely to

his own self-serving, uncorroborated assertions, made more than 25 years after the fact, that he lacked an intent to kill. *See Anderson v. Mitchem*, 2012 WL 6186340, at *1 (N.D. Ala. Dec. 12, 2012) ("Anderson's mere denial that he 'intentionally' killed the victim is insufficient to show that he is actually innocent of the murder charge to which he pled guilty."); *Kuenzel v. Allen*, 880 F. Supp. 2d 1162, 1181 (N.D. Ala. 2009) ("In short, a petitioner's own insistence on his innocence should not sway the habeas court."), *aff'd sub nom. Kuenzel v. Commissioner, Ala. DOC*, 690 F.3d 1311 (11th Cir. 2012).

Second, even if it were otherwise factually plausible, Daniel's claim of intoxication based on his misuse of alcohol and prescription medication is legally insufficient to establish the miscarriage-of-justice exception in this Circuit. Under Alabama law, voluntary intoxication is not a complete defense to a criminal charge, but it can mitigate culpability, authorizing a conviction for manslaughter rather than intentional murder, where the jury finds that the defendant's intoxication prevented him from forming the specific intent to kill. *See Ex parte McWhorter*, 781 So. 2d 330, 340–41 (Ala. 2000); *Lam Luong v. State*, 199 So. 3d 173, 199-200 (Ala. Crim. App. 2015). However, as the magistrate judge recognized, under the law of this circuit, Daniel cannot establish *McQuiggin*'s actual innocence exception by showing merely that he is guilty of only a lesser degree of homicide. *See Rozzelle v. Secretary, Fla.*

*DOC*, 672 F.3d 1000, 1015 (11th Cir. 2012); *Sims v. Carter*, 2014 WL 5419328, *4 (M.D. Ala. Oct. 22, 2014).

Daniel's suggestion that he must be actually innocent of at least one of the murder charges since he killed both victims with a single gunshot is also specious. That is, under the doctrine of transferred intent, if Daniel was found to have intended to kill only one victim, he would be guilty of murder not only as to that victim but also as to any bystander killed inadvertently. *See* Ala. Code § 13A-6-2(a)(1) ("A person commits the crime of murder if he ..., [w]ith intent to cause the death of another person, he ... causes the death of that person *or of another person*." (emphasis added); *Living v. State*, 796 So. 2d 1121, 1131 (Ala. Crim. App. 2000) ("Under the doctrine of transferred intent, ... if [the defendant] intended to kill [one victim] he would be criminally culpable for murder with regard to the unintended death of [the other victim]."); *McKinney v. State*, 511 So. 2d 220, 225 (Ala. 1987) (Alabama state law authorizes multiple convictions based on a single act that results in injury or death to multiple victims); *Brooks v. State*, 973 So. 2d 380, 406 (Ala. Crim. App. 2007) ("Both robbery and murder are crimes against the person, and they both ... allow multiple convictions [under *McKinney*] when multiple victims are involved."); *Lewis v. Richards*, 2017 WL 2539836, at *5 (N.D. Ohio Apr. 17, 2017), *report and recommendation adopted*, 2017 WL 2538582 (N.D. Ohio June 9, 2017); *Miller v.*

*Clarke*, 2017 WL 2313011, at *3 (E.D. Va. Apr. 28, 2017), *report and recommendation adopted*, 2017 WL 2312939 (E.D. Va. May 26, 2017); *Devine v. Diguglielmo*, 2004 WL 945156, at *4 (E.D. Pa. Apr. 30, 2004). This objection is due to be overruled.

## IV.

In his final set of arguments, Daniel challenges statements in the R&R recognizing that, even assuming that his Fifth Amendment double-jeopardy claim and an associated ineffective-assistance-of-counsel claim were not time barred, they are meritless. (Doc. 9 at 22-29). In short, Daniel insists that his two murder convictions violate double jeopardy because he allegedly killed both of his victims with a single shotgun blast. The magistrate judge disagreed, explaining that Daniel's double jeopardy claim was foreclosed because Alabama state law authorizes multiple murder convictions based on a single act that results in death to multiple victims. (*See* R&R at 11 (citing *McKinney*, 511 So. 2d at 225; *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Arrowood v. McNeil*, 2008 WL 817074, at *20–21 (N.D. Fla. Mar. 25, 2008), *report and recommendation adopted*, 2008 WL 1735387 (N.D. Fla. Apr. 15, 2008)).

As a threshold matter, the court would note that even assuming for the sake of argument that Daniel were correct that these claims are meritorious, he still would not be entitled to relief based on them because they are untimely, as explained above.

18

Nevertheless, Daniel, not the magistrate judge, is wrong in his estimation of the these claims. Daniel first argues that the magistrate judge erred because his rejection of the double jeopardy claim purportedly relied only upon Alabama state law, rather than federal law. (*See* Doc. 9 at 23). True, the "federal courts, and not the state courts, are the final arbiters of the scope of federal constitutional rights," and that state courts "may not derogate federal protection for double jeopardy based on [state law]." *Mars v. Mounts*, 895 F.2d 1348, 1352 (11th Cir. 1990). However, the R&R's brief discussion of double jeopardy cited not only the Alabama Supreme Court's opinion in *McKinney* but also federal court decisions, including one from the United States Supreme Court. (*See* R&R at 11).

In any event, "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *see also United States v. Davis*, 656 F.2d 153, 157 (5th Cir. Sept. 14, 1981) ("[I]f we find that Congress intended multiple sentences to be imposed for simultaneous possession of different types of drugs, any question of violation of the double jeopardy clause is foreclosed."). To that end, the magistrate judge correctly recognized that Alabama law authorizes multiple murder convictions and punishments where a single criminal act kills two or more victims. *See McKinney*, 511 So. 2d at 223-25; *Brooks*, 973 So.

2d at 406 ("Both robbery and murder are crimes against the person, and they both ... allow multiple convictions [under *McKinney*] when multiple victims are involved."). Contrary to Daniel's suggestion, the Double Jeopardy Clause of the Fifth Amendment does not prohibit the States from so construing their criminal statutes. *See Miller v. Turner*, 658 F.2d 348, 350 (5th Cir. Unit B Oct. 5, 1981)[4]; *Hall v. Wainwright*, 493 F.2d 37, 38-39 (5th Cir. 1974); *Gentry v. MacDougall*, 685 F.2d 322, 323 (9th Cir. 1982); *Arrowood,* 2008 WL 817074 at *20-21.

Daniel also insists that his double jeopardy rights were violated on the theory that his two murder convictions are for a greater offense and a lesser-included offense based on the same conduct. Daniel highlights that he was originally indicted for capital murder under Ala. Code § 13A-5-40(a)(10), which applies where "two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct." Daniel says that the prosecutor subsequently "took it upon himself to change Daniel's charges by splitting up a single crime" into two counts of intentional, non-capital murder under Ala. Code § 13A-6-2(a)(1). Daniel then pled guilty to those two charges, for which he received two consecutive life sentences. In support of his assertion that those convictions violate double jeopardy, Daniel characterizes his case

---

[4]Published decisions "made by a non-unit panel of the Former Fifth, the full en banc court of the Former Fifth, or Unit B panel of the Former Fifth Circuit" are binding precedent in the Eleventh Circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

as presenting the "same issue" as *Borden v. State*, 711 So. 2d 493 (Ala. Crim. App.

1997), *aff'd*, 711 So. 2d 506 (Ala. 1998), in which the Alabama Court of Criminal

Appeals held that defendant could not be convicted of both capital murder under §

13A-5-40(a)(10) and intentional murder under § 13A-5-6(a)(1) where the victim on

the latter charge was also one of the two victims on the former.  711 So. 2d at 502-04.

(Doc. 9 at 25).

Daniel's reliance on *Borden* is wholly misplaced.  That court concluded that the

defendant's convictions violated double jeopardy because the capital offense of

intentionally killing two victims in one course of conduct encompassed all of the

elements of the non-capital offense of intentionally killing of one of those same

victims.  *Borden*, 711 So. 2d at 502-04; *see also Heard v. State*, 999 So. 2d 992, 1008-

09 (Ala. 2007); *Blockburger v. United States*, 284 U.S. 299 (1932).  That principle

does not aid Daniel, however, because, while he was *indicted* on one count of capital

murder based on the killing of two victims under § 13A-5-40(a)(10), he was never

*convicted* of that offense, unlike the defendant in *Borden*.  Instead, Daniel stands

convicted on two counts of non-capital, intentional murder under Ala. Code § 13A-6-

2(a)(1), each of which is based on the killing of a different victim.  As such, neither

murder conviction is an included offense of the other, so there is no double jeopardy

problem.  *See Miller, supra.*

21

**IV.**

Having carefully reviewed and considered *de novo* all the materials in the court file, including the magistrate judge's Report and Recommendation and the Petitioner's Objections to it, the court agrees that the magistrate judge's findings are due to be and are hereby **ADOPTED** and his recommendation is **ACCEPTED**. Petitioner's Objections are **OVERRULED**.

As a result, the petition for writ of habeas corpus is due to be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**. Further, because the petition does not present issues that are debatable among jurists of reason, a certificate of appealability is also due to be **DENIED**. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); Rule 11(a), Rules Governing § 2254 Proceedings. A separate Final Order will be entered.

DONE and ORDERED this 13th day of March, 2018.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE